UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARDEN CITY EDUCATION
ASSOCIATION, on its own behalf and on
behalf of all Garden City teachers and JUANA
COZZA and ROBERT NUTT,

    Plaintiffs,                         CIVIL ACTION: 12-14886

v.                                       HON. GERALD E. ROSEN

SCHOOL DISTRICT OF THE CITY OF
GARDEN CITY, a Michigan public school
district,

    Defendant.

___

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____

PRESENT:   Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiffs Garden City Education Association (the "GCEA"), a union representing education professionals employed by Defendant School District of the City of Garden City (the "School District"), and Juana Cozza and Robert Nutt, tenured teachers and former employees of the School District, filed this action in the Wayne County Circuit Court alleging violations of the amended Michigan Revised School Code, M.C.L. §§

1

380.1248 and 380.1249 (Count I), and due process violations under the United States and Michigan Constitutions (Count II). Defendant timely removed the action to this Court on November 1, 2012 on the basis of federal question jurisdiction.

Plaintiffs' claims arise from personnel decisions made by Defendant based on results from annual teacher effectiveness evaluations mandated by § 1248 of the Revised School Code (the "RSC"), which resulted in indefinite layoffs for individual Plaintiffs Cozza and Nutt, and twenty-three other education professionals. Twenty-four of the 25 laid-off teachers were tenured professionals. Plaintiffs allege that, by the structure of the teacher evaluation process and the degree of reliance on evaluation results in making personnel decisions, Defendant violated the statutory requirements of the RSC and unconstitutionally deprived Plaintiffs Cozza, Nutt, and other non-party unnamed laid-off teachers represented by the GCEA of their property rights as tenured teachers.

This matter is presently before the Court on the School District's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings. Plaintiffs have responded to the School District's motion, and the School District has replied. Plaintiffs also submitted two supplementary responses to which the District has sur-replied.

Having reviewed and considered the parties' briefs and the record of this matter, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court

will decide Defendant's motion "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

**The 2011 Amendments to the Revised School Code**

In July 2011, the Michigan Legislature made substantial changes in the law with regard to teacher tenure and public school employment. Two of these changes involved amendments to the Revised School Code, M.C.L. § 380.1 *et seq.*

First, the Legislature amended M.C.L. § 380.1249 which governs teacher evaluations. The amendments did not change the basic substance of § 1249 as it existed since it was first enacted in January 2010 – the statute requires that school boards, with the involvement of teachers and school administrators, adopt and implement a "rigorous, transparent and fair performance evaluation system" that provides for the annual evaluation of teachers and school administrators within the school district using multiple rating categories that take into account as a significant factor student growth (as measured by national, state, or local assessments and other objective criteria). M.C.L. § 380.1249(1). The July 2011 amendments added a requirement that each district's performance evaluation system also rate teachers as "highly effective," "effective," "minimally effective," and "ineffective," M.C.L. § 380.1249(1)(c), and delineated, in graduating percentages, beginning in the 2013-14 school year, the extent to which annual teacher evaluations are to be based on student growth and assessment data. M.C.L. §

380.1249(2).[1] A district's performance evaluation system must also provide that if a teacher is rated as "ineffective" for three consecutive years, the teacher must be dismissed. M.C.L. § 380.1249(h).

The Legislature also created a council on educator effectiveness to oversee the evaluation process, M.C.L. § 380.1249(4), and put enforcement in the hands of the Michigan Department of Education. If the MDE determines that a school district is not in compliance with Section 1249, it risks a loss of funding from the State. The Michigan State School Aid Act, M.C.L. § 388.1704, directly ties receipt of state aid to compliance with Section 1249. ("In order to receive state aid under this article, a district shall comply with sections **1249**, 1278a, 1278b, 1279, 1279g, and 1280b of the revised school code, **MCL 380.1249**, 380.1278a, 380.1278b, 380.1279, 380.1279g, and 380.1280b, and 1970 P.A. 38, M.C.L. 388.1081 to 388.1086." M.C.L. § 388.1704(1)).

At the same time that it amended § 1249, the Legislature also added a new section -- § 1248 -- to the RSC. This policy section demands that school districts focus on retaining effective teachers when making personnel decisions, including decisions on personnel reductions and staffing after a staff reduction (including recalling personnel or hiring new personnel). M.C.L. § 380.1248(1)(b). To effectuate this goal, § 1248 sets

---

[1] For the annual year-end evaluation for the 2013-14 school year, at least 25% of the annual year-end evaluation must be based on student growth and assessment data. For the 2014-15 evaluation, at least 40% of the evaluation must be based on student growth and assessment data. Thereafter, beginning with the 2015-16 school year, at least 50% of the evaluation must be based on student growth and assessment data. M.C.L. § 380.1249(2)(a)(i).

4

forth specific factors that must be the basis of such personnel decisions. These factors are: (1) a teacher's individual performance (which is to be the majority factor in making the decision); (2) a teacher's "[s]ignificant, relevant accomplishments and contributions"; and (3) a teacher's relevant special training. *Id.* The statute expressly prohibits using length of service or tenure status as "the primary or determining factor" in personnel reduction decisions, M.C.L. § 380.1248(1)(a). Rather, a teacher's length of service or tenure status may only be considered as a tie-breaker if the other three factors set forth in § 1248(1)(b) are all equal. M.C.L. § 380.1248(1)(c).[2]

Section 1248 allows individual teachers to bring a private right of action against a district for violation of that section, but the "sole and exclusive" remedy is limited to an order of reinstatement. M.C.L. § 380.1248(3). "The remedy. . . shall not include lost wages, lost benefits, or any other economic damages." *Id.*

**The Parties in this Action**

Plaintiff Garden City Education Association is a voluntary labor organization representing teachers and professional personnel employed by Defendant Garden City School District. Plaintiffs Juana Cozza and Robert Nutt are tenured teachers and members of the GCEA, who were employed full-time by Defendant School District until their employment was indefinitely terminated in June 2012. After she was laid off,

---

[2] Districts are exempted from adhering to subsection 1 and all of its sub-parts if a collective bargaining agreement is in effect as of the effective date of the statute (July 19, 2011) until after the expiration of that collective bargaining agreement. M.C.L. § 380.1248(2).

Cozza formally retired and is currently collecting retirement benefits through the Michigan Public School Employees Retirement System. Plaintiff Nutt, however, was recalled by the School District in November 2012 and currently remains employed.[3] All of the other teachers laid off in June 2012 have also been reinstated the Defendant School District.

**Plaintiffs' Complaint Allegations**

In this action, Plaintiffs complain that the evaluation instrument used by the Garden City School District in 2011-12 was developed and implemented unilaterally by the District. They allege that, sometime in September 2011, school administrators informed the GCEA and its members of the particulars of a new evaluation instrument that would be used to evaluate teacher performance. [Amended Complaint, ¶ 8.] Additionally, during the course of the 2011-12 school year, two additional evaluation instruments were also implemented for Teacher Consultants and Teacher/Speech Pathologists. *Id.* ¶ 12. According to Plaintiffs, neither the teachers nor the GCEA had any input or participation in the development of the evaluation instruments. *Id.* ¶¶ 9, 13.

On June 4, 2012, Defendant's Board of Education announced the indefinite layoffs of Plaintiffs Cozza and Nutt, and 23 other Teacher Consultants and Teacher/Speech Pathologists, 24 of whom are tenured. According to Plaintiffs, Defendant selected 23 of

---

[3] Paragraph 17 of Plaintiffs' Complaint states that Nutt was recalled in December "2011." Because the layoffs that are the subject of this action did not occur until June 2012, the Court assumes that the "2011" date in the Complaint is merely a typographical error and the Plaintiff Nutt's recall actually occurred in December 2012.

the 25 individuals for layoff based exclusively on the evaluation scores they received under the District's new evaluation system. *Id.* However, in selecting two additional teachers for layoff (whom Plaintiffs do not identify), Defendant allegedly ignored their evaluation scores and instead used their seniority as the determining criteria for layoff. *Id.* Plaintiffs do not dispute that all of the laid off teachers have been recalled except for Plaintiff Cozza who elected to retire.

The GCEA, and Plaintiffs Nutt and Cozza contend in this lawsuit that in unilaterally developing and implementing the evaluation system used in 2011-12 without input or participation by the union or the teachers, and in using, in the case of two (unidentified) individuals, seniority, and not teacher performance, as the determining factor in the layoff decision, the School District violated M.C.L. § 380.1249. As a result of this alleged statutory violation, Plaintiffs claim they are entitled to recover as damages their lost salaries and benefits, plus interest, costs and attorney fees, and are further entitled to an injunctive order directing the School District to immediately discontinue using the evaluation instruments at issue and to remove from all files the evaluations, evaluation scores and related materials of all teachers employed by it during the 2011-12 school year. Plaintiff Cozza and Nutt further claim that they are entitled to recover their tenured teaching positions.

The School District now moves for judgment on the pleadings on all of Plaintiffs' claims against it.

## III. ANALYSIS

A.  **APPLICABLE STANDARDS**

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are analyzed under the same standards as those which govern Rule 12(b)(6) motions to dismiss for failure to state a claim. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir.2008). Accordingly, the Court accepts the complaint's allegations as true, and construes those allegations in the plaintiff's favor. *Id.* However, to survive a motion to dismiss, or for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

B.  **PLAINTIFFS LACK STANDING TO BRING A CLAIM UNDER § 300.1249**

In Count I of their Amended Complaint, Plaintiffs allege violation of two statutes, M.C.L. § 380.1248 and M.C.L. § 380.1249. Count I, for the most part, is predicated upon the School District's alleged failure to comply with the statutory requirements of Section 1249 in the development and implementation of its teacher performance evaluation system. Defendant seeks dismissal of Plaintiffs' claims under Count I by first

arguing that Plaintiffs lack statutory standing to bring a claim for violation of Section 1249.

Under Michigan jurisprudence, a party asserting the violation of a statute may have constitutional standing to assert a claim yet lack statutory standing to do so. "That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides." *Miller v. Allstate Ins. Co.*, 481 Mich. 601, 607; 75 N.W.2d 463 (2008). To determine if statutory standing exists, the question must be asked whether the Legislature "has accorded this injured plaintiff the right to sue the defendant to redress his injury." *Id*. (citation omitted). This inquiry "simply [entails] statutory interpretation." *Id*. Thus, to determine whether Plaintiffs in the instant action have statutory standing to bring any claim for the violation of Section 1249, the Court must determine whether the Legislature intended to allow an individual teacher to bring a suit under that statute.

The Court first notes that there is no express provision in Section 1249 providing for a private cause of action. Rather, there is a general enforcement provision that applies to the entire Revised School Code. Part 32 of the RSC sets forth several sections dealing specifically violations of the Act's provisions. *See* M.C.L. §§ 380.1801-380.1816. Section 1804 provides that "[e]xcept as otherwise provided in this act, a school official or member of a school board or intermediate school board or other person who neglects or refuses to do or perform an act required by this act, or who violates or knowingly permits or consents to a violation of this act, is guilty of a misdemeanor punishable by a fine of

9

not more than $500.00 or imprisonment for not more than 3 months, or both." M.C.L. § 380.1804. Section 1806 further provides that "[t]he board of a school district or intermediate school district may dismiss from employment and cancel the contract of a superintendent, principal, or teacher who neglects or refuses to comply with this act." M.C.L. § 380.1806. Thus, the RSC has an enforcement mechanism designed to ensure that all of its provisions are followed by school board members and school officials. Section 104 of the Michigan State School Aid Act, § 388.1704, also directly ties receipt of state aid to a school district's compliance with Section 1249. Thus, the legislative mechanism created to ensure a district's compliance with the provisions of § 1249 is the withholding of state funding, and not through an individual cause of action. Indeed, Section 1249 neither discusses nor grants any private right of action.

Further, when it enacted Section 1249, the Legislature also created the "governor's council on educator effectiveness" (renamed the "Michigan Council of Educator Effectiveness," effective May 27, 2012, *see* M.C.L. § 18.444). As provided in the statute, the council is tasked with, among other things, developing a statewide evaluation tool and a means by which the Department of Education can evaluate local evaluation tools developed under § 1249. *See* M.C.L. § 380.1249(5). Where a statute "provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer, a private right of action will not be inferred." *Claire–Ann Co. v. Christenson & Christenson, Inc.*, 223 Mich. App. 25, 31, 566 N.W.2d 4 (1997) (citations omitted).

Moreover, when Section 1249 is juxtaposed against Section 1248 in which the Legislature explicitly provided for a right of action by a teacher aggrieved by the statute, and given that Section 1249 was amended at the same time that the Legislature enacted Section 1248, it is obvious that if the Legislature had wanted to afford aggrieved individuals a private right of action for violation of Section 1249 it could easily have done so. As the Michigan Supreme Court observed in *Miller, supra* "the expression of one thing is the exclusion of another." 481 Mich. at 611.

For these reasons, the Court concludes that the Legislature did not intend to create a private right of action for individual teachers or their unions to sue a local school district for violation of Section 1249 of the RSC.[4]

Plaintiffs argue that the Court should nonetheless allow Plaintiffs' claim of violation of Section 1249 to go forward and cite as the sole basis for its argument that a Judge of the Oakland County Circuit Court has allowed a cause of action brought by a teacher's union against a school district challenging the district's unilateral development and implementation of a performance evaluation system to go forward. *See Southfield Educ. Assn. v. Southfield Board of Education*, Oakland Co. Cir. Ct. No. 12-124611-CL (appended as Ex. A to Plaintiffs' Response). However, as a state trial court decision, the case is not binding on this Court. Furthermore, as Plaintiffs concede, standing was never raised as an issue in the *Southfield* case nor is it addressed in the court's opinion.

---

[4] The State Board of Education, however, may sue to compel a district's compliance with the statute. *See generally* M.C.L. § 388.1007; *see also Michigan Department of Education v. School Dist. Of Garden City*, 62 Mich. App. 376, 233 N.W.2d 547 (1975).

Nor can a private cause of action for damages be inferred in this case. In *Gardner v. Wood*, 429 Mich. 290, 414 N.W.2d 706 (1987) the Michigan Supreme Court held that when a statute is silent concerning whether a private remedy is available for a statutory violation, a court may infer a private cause of action "if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision . . . ." 429 Mich. at 501 n. 5 (quoting 4 Restatement Torts, 2d, § 874A, p. 301). Utilizing a test derived from the Second Restatement of Torts, *Gardner* held that a cause of action could be created to redress a statutory violation where the purpose of the statute at issue was found to be exclusively or in part

> (a) to protect a class of persons which includes the one whose interest is invaded,
> (b) to protect the particular interest which is invaded,
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*Id*. at 302, (quoting *Longstreth v. Gensel*, 423 Mich. 675, 692–693, 377 N.W.2d 804 (1985), (quoting 2 Restatement Torts, 2d, § 286, p. 25).).

While this four-factor test focuses on the purpose of the statute, the court in *Gardner* further determined that the purpose of the statute alone was an insufficient basis for inferring a private right of action. Rather, *Gardner* held that any determination to infer a private cause of action should also be consistent with legislative intent. 429 Mich. at 304. Absent evidence of legislative intent, no remedy may be inferred. *Id*. *See also, Lash v. Traverse City*¸479 Mich. 180, 193, 735 N.W.2d 628 (2007); *See People v. Anstey*, 476 Mich. 436, 445 n. 7, 719 N.W.2d 579 (2006); *Office Planning Group v. Baraga-*

*Houghton-Keweenaw Child Dev. Bd.*, 472 Mich. 479, 498, 697 N.W. 2d 871 (2005); *Grand Traverse Co. v. Michigan*, 450 Mich. 457, 465, 538 N.W.2d 1 (1995). As indicated above, here there is no evidence of that a private cause of action would be consistent with legislative intent.

Moreover, in *Lash v. Traverse City, supra¸* the Court went on to hold that the *Gardner* analysis could not be applied to allow a private cause of action for money damages to be implied against a governmental entity because "without 'express legislative authorization,' a cause of action cannot be created 'in contravention of the broad scope of governmental immunity . . . .'" *Lash,* 479 Mich. at 194 (quoting *Mack v. Detroit¸* 467 Mich. 186, 196, 649 N.W.2d (2002)).

Governmental immunity in Michigan is created and defined by the Governmental Tort Liability Act (the "GTLA"), M.C.L. § 691.1401, *et seq.* With certain exceptions not applicable here, [5] "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. § 691.1407(1). § 690.1401(a) and (e), respectively define "governmental agency" to mean "this state or a political subdivision," and a "political subdivision" to mean "a municipal corporation, county, county road commission, *school district*, community college district, port district, metropolitan district, or transportation

---

[5] The six statutory exceptions to governmental immunity are the highway exception, § 691.1402; the motor vehicle exception, § 691.1405; the public building exception, § 691.1406; the governmental hospital exception, § 691.1407(4); the proprietary function exception, §691.1413; and the sewage system event exception, § 691.1417.

authority or a combination of 2 or more of these when acting jointly . . . ." (emphasis added). M.C.L. § 690.1401(b) defines "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, *statute*, local charter or ordinance, or other law." (emphasis added).

Thus, as the Court in *Lash* made clear, "under the GTLA, the defendant is immune from tort liability 'unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government.'" *Lash*, 479 Mich. at 195 (quoting *Mack,* 467 Mich. at 195).

As the Legislature has clearly not created a cause of action for damages under Section 1249, Plaintiffs cannot maintain one against the Defendant School District. To hold otherwise would be contrary to the broad grant of governmental immunity under the GTLA. Therefore, Plaintiffs' claims for economic damages in their claim under Section 1249, including their recovery of lost salary, benefits or attorney fees, cannot be sustained and, accordingly, this claim will be dismissed.

### C. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER SECTION 1248

Plaintiffs also claim that Defendant has violated M.C.L. § 380.1248. While Section 1248 does allow a teacher to bring a private cause of action for violation of that statute, the "sole and exclusive remedy" for such a violation is an order of reinstatement; economic damages – including lost wages and benefits – are expressly precluded. M.C.L.

14

§ 380.1248(3).[6] Plaintiff Nutt has already been reinstated and Plaintiff Cozza is no longer eligible for reinstatement as she has formally retired and is collecting retirement benefits through the Michigan Public School Employees Retirement System. As the statute precludes monetary damages, Section 1248 affords Plaintiffs Cozza and Nutt no claim for relief. Although in their Amended Complaint, Plaintiffs also allege that "in at least 2 instances, Defendant used seniority as a 'determining' reason for the selection of teachers for layoff", [Amended Complaint, ¶ 23(i)], they do not allege that such decision was made in relation to Plaintiffs Cozza or Nutt.

The GCEA, nonetheless, argues that it is entitled to proceed with an action under Section 1248 because it represents all teachers in the Garden City School District, including the two unidentified teachers who were allegedly laid off based on their seniority in contravention of the statute. However, nothing in the statute states that a union may sue for violation of Section 1248. But even if an action by a union, in its representative capacity on behalf of an aggrieved teacher, is not precluded, the GCEA has identified no specific teacher that has been placed on layoff as a result of his or her

---

[6] In *Charter Twp. of Northville v. Northville Public Schools*, 469 Mich. 285, 666 N.W.2d 213 (2003), the Michigan Supreme Court explained that in construing statutory text "if unambiguous, the Legislature will be presumed to have intended the meaning expressed, and the courts enforce that meaning without further judicial construction or interpretation." *Id.* at 291. Specifically, with respect to the terms "sole" and "exclusive," the *Charter Township* court held: "We find the dictionary definitions dispositive. 'Sole' means '[b]eing the only one; existing or functioning without another or others; only.' *The American Heritage Dictionary of the English Language* (1981). Similarly, 'exclusive' is defined as 'not divided or shared with others [or] single or independent; sole.'" *Id.*

seniority and, thus, is representing no actual party. Without identification, Plaintiffs have not "raise[d] a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, even if Plaintiff GCEA could sue on behalf of these unnamed, unknown teachers in this action, there is no allegation that those teachers are still off work. Indeed, Plaintiffs do not dispute that *all* of the teachers laid off in June 2011 have been recalled. Therefore, even if suit could be brought on behalf of the two unidentified teachers who were allegedly laid-off based on their seniority, as their remedy under Section 1248 would be limited to reinstatement, any such cause of action would be moot.

For these reasons, the Court concludes that Plaintiffs have failed to state a cause of action for violation of M.C.L. § 380.1248.

### D. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF THEIR CONSTITUTIONAL DUE PROCESS RIGHTS

In Count II of their Complaint, Plaintiffs Cozza and Nutt assert a claim of violation of their due process rights under the Michigan and United States Constitutions. When the government seeks to deprive a person of a property right, due process requires a "hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 308, 313, 70 S.Ct. 652 (1950); *Rockwell v. Board of Education*, 393 Mich. 616, 633, 227 N.W.2d 736 (1975). In the case of teacher tenure in Michigan, that right is defined by the Teacher Tenure Act, M.C.L. § 38.71, *et seq.*

Neither party denies that Plaintiffs Cozza and Nutt have vested property rights in their tenured teaching positions: There is no question that a public employee that has

received tenure through state law has a property interest as defined by state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494; *Bd. of Regents v. Roth*, 408 U.S. 506, 577; 92 S.Ct. 2701, 33 L.Ed.2d 548." However, a state law that grants a property interest may define the boundaries of that property interest. *Roth, supra*. In other words, the state law that creates the interest can define what the interest is, how it may be gained, and how it may be taken away.

With respect to layoffs, it has been specifically established under Michigan law that a tenured teacher is not given any protection of his or her employment from a bona fide reduction in personnel. *Chester v. Harper Woods Sch. Dist.*, 87 Mich. App. 235, 243-44, 273 N.W.2d 916 (1978). Therefore, no process is due a tenured teacher who is laid off unless the reduction in personnel is not bona fide. *Baumgartner v. Perry Pub. Schools*, State Tenure Commission No. 12-13 (2012).

As the Michigan Court of Appeals explained in *Chester*:

> [W]here the question is whether a tenured teacher may be dismissed for incompetence or improper conduct, he is entitled to a hearing [under Article IV of the TTA]. *See Rehberg v Board of Education of Melvindale, Ecorse Twp School Dist No 11*, [345 Mich. 731, 77 N.W.2d 131 (1956)]. This serves the purpose of the teachers' tenure act which is "to eliminate capricious employment practices by school boards and protect teachers from arbitrary and unreasonable dismissals".*Pounder v Harper Woods Board of Education*, 72 Mich App 717,7 23; 250 NW2d 504 (1976), modified 402 Mich 91; 260 NW2d 287 (1977), *reh den*, 402 Mich 960 (1978).
>
> Where, however, the question is whether, because of economic necessity, a particular teacher should be laid off in the first instance, he is not entitled to either notice of the charges against him or a hearing [as defined by the act]. Such would constitute a useless gesture since neither his conduct nor performance is being called into question. *Steeby v School Dist of the City of Highland Park,* 56 Mich App 395; 224 NW2d 97 (1974). Here, review by the tenure commission would be

limited to "whether the [controlling] board of education, under the guise of a 'necessary reduction in personnel', used circuitious [sic] methods in removing the [teacher from its school system without the protections afforded by the teachers' tenure act". *Freiberg v Board of Education of Big Bay De Noc School Dist*, 61 Mich App 404, 416; 232 NW2d 718 (1975); *Goodwin v Board of Education of the School Dist of the City of Kalamazoo*, 82 Mich App 559; 267 NW2d 142 (1978). This is consistent with our reading of MCL 38.121; MSA 15.2021 which provides that "[a] teacher who has achieved tenure status may appeal any decision of a controlling board under this act". Since the act is silent with regard to what constitutes a "necessary reduction in personnel" such issue is not appealable unless cast in terms which allege that the "necessary reduction in personnel" was not made in good faith but amounted to a subterfuge to avoid the act's protections.

*Id.*

This concept and structure has been continued through the latest amendment of the Teacher Tenure Act. *See Baumgartner, supra* (finding no support for the argument that the amendments to Sections 1248 and 1249 were intended to preempt the Tenure Commission's jurisdiction over claims of subterfuge). In *Baumgartner*, the Tenure Commission reasoned:

> [T]he instant claim of appeal is not an action based on Section 1248 of the Revised School Code. Rather, it is an action brought pursuant to an entirely separate statute, the Teachers' Tenure Act. . . . [W]ith the exception of the modification of the standard of review set forth in MCL 38.101(1), these longstanding provisions remain unchanged notwithstanding the Legislature's several amendments to the Teacher Tenure Act in 2011. MCL 380.1248(3), therefore, does not support a finding that this Commission has no jurisdiction in this matter.

*Id.*

Plaintiffs Cozza and Nutt have not alleged nor do they argue that the Garden City School District's 2012 reduction in personnel was not bona fide nor do they suggest that their layoffs were a subterfuge to avoid the protections of the Teacher Tenure Act. Therefore, as there is no evidence suggesting that this matter involves anything other than

a necessary reduction in personnel, Plaintiffs Cozza and Nutt have no due process right as tenured teachers except to present a claim before the State Tenure Commission challenging their layoffs as being a subterfuge intended to circumvent their tenure rights. *See id.; see also Aubert v. Reed City Area Pub. Schools*, STC # 12-16 (2012); *Wright v. Flint Community Schools*¸ STC # 12-11 (2013). Although Plaintiffs posit that *Baumgartner* may be overturned on appeal, the potential that a decision *may* be overturned is not a legitimate reason not to apply it. *Baumgartner* is currently the applicable law in Michigan relative to the layoff of tenured teachers in the aftermath of the 2011 legislative actions and its reasoning has been discussed at length and applied in several well-reasoned subsequent cases. *See Aubert, supra;Wright, supra*; *see also Copp v. Plymouth Canton Community Schools*, STC # 12-12 (2013) [Defendant's Reply Brief, Ex. C].

The Teachers' Tenure Act has set a process for a hearing claiming a violation of an individual's rights under that act and provides ample process. Plaintiffs, however, have filed no claim with the State Tenure Commission and, thus, have not even sought the process that may be due them.

For all of the foregoing reasons, the Court concludes that Plaintiffs have failed to state a cognizable claim for violation of their due process rights.

## **CONCLUSION**

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings **[Dkt. # 13]** is GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.

Dated:  September 30, 2013        s/Gerald E. Rosen
                                  GERALD E. ROSEN
                                  CHIEF, U.S. DISTRICT COURT

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 30, 2013, by electronic and/or ordinary mail.

                                  s/Julie Owens
                                  Case Manager, 313-234-5135